UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

B&P LITTLEFORD, LLC,

       Plaintiff,                               Case No. 1:25-cv-13348

v.                                           Honorable Thomas L. Ludington
                                                United States District Judge
PRESCOTT MACHINE, LLC, and
RAY MILLER,

       Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff B&P Littleford designs and builds industrial equipment and produces technical drawings of the product designs to, among other things, preserve and protect their work product. It protects these technical drawings by copyright and its use of nondisclosure agreements. Its former president, Defendant Ray Miller, was terminated in 2008 and later formed Defendant Prescott Machine, LLC ("Prescott"), leading to two rounds of litigation in this Court concerning Defendant Prescott's alleged misuse of Plaintiff's proprietary drawings and derivative drawings. Those cases were resolved by settlement in 2022.

Plaintiff now claims that Defendants continue to use drawings substantially similar to—and derived from—some of Plaintiff's copyrighted drawings. As a result, Plaintiff sued Defendant a third time, filing a new Complaint on October 22, 2025. Plaintiff then moved for an *ex parte* temporary restraining order (TRO), in part to prevent Defendants from using the drawings to unfairly compete against Plaintiff. But, as explained below, Plaintiff has not satisfied the procedural prerequisites for an *ex parte* TRO. Thus, its Motion for a TRO will be denied.

### I.

### A. Prior Litigation

For over one hundred years, ECF No. 1 at PageID.8–9, n.6, Plaintiff B&P Littleford, LLC, and its predecessors have "design[ed] and buil[t] industrial equipment," including "vertical planetary batch mixer[s]" used for "solid rocket fuel," *B&P Littleford, LLC v. Prescott Mach., LLC*, No. 20-1449, 2021 WL 3732313, at *1, *3 (6th Cir. Aug. 24, 2021). Plaintiff routinely "maintains drawings of individual parts as well as assembly drawings that show how the parts are put together." *Id.* at *1. It also "imposes strict nondisclosure requirements," *id.*, and further safeguards many of these drawings with copyrights, *see* ECF No. 1 at PageID.10.

Defendant Ray Miller served as Plaintiff's "president and CEO from 1995 to 2008, when he was fired" for "suspicions of misconduct"—including "self-dealing and destroying documents." *B&P Littleford, LLC*, 2021 WL 3732313, at *1. After Plaintiff fired Defendant Miller, he created his own company, Defendant Prescott Machine, LLC ("Prescott"), to service and repair industrial equipment. *Id.* at *2. Ultimately, that led to two rounds of litigation concerning Plaintiff's technical part drawings. *See B&P Littleford, LLC v. Prescott Mach., LLC*, No. 1:20-CV-13025, 2022 WL 625069, at *1–3 (E.D. Mich. Mar. 3, 2022).

The first round of litigation began in 2018. *See B&P Littleford, LLC*, 2021 WL 3732313, at *4. In that case, Plaintiff sued Defendants for misappropriating Plaintiff's trade secrets to secure a contract to rebuild an industrial mixer for the United States Navy that Plaintiff initially installed. *Id.* at *3–4. To that end, Plaintiff alleged that Defendant used 27 of Plaintiff's protected part drawings to fulfill the secured contract that Defendant Miller had obtained. *Id.* at *3.

The second round of litigation began in 2020. *B&P Littleford, LLC*, 2022 WL 625069, at *1. The second case involved similar alleged conduct—Defendants using Plaintiff's part drawings to create unauthorized reproductions or derivative drawings. *Id.* But this time, Plaintiff brought

copyright infringement claims under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. §§ 1201 *et seq.*, and Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, which survived a motion to dismiss. *Id.* at *2–3.

In the end, in 2022, the Parties settled both cases. *See* ECF No. 2-2 (sealed). The Settlement Agreement required Defendants to "destroy every copy of any of the B&P Drawings" in Defendants' "possession, custody, or exclusive control" and any other B&P documents they possessed. *Id.* at PageID.246. It also required Defendants to "destroy every copy of any Covered Prescott Drawing"—essentially, derivative drawings that Defendant Prescott generated from Plaintiff's technical drawings—that they possessed. *Id.* Moreover, the Settlement Agreement prohibited Defendants from "aquir[ing] or us[ing], or attempt[ing] to acquire or use, any of B&P's Drawings" without authorization from Plaintiff. *Id.* at PageID.247. And Defendants agreed "not to challenge B&P's ownership of or copyright to the B&P Drawings in any proceeding relating to or arising from a breach of" the Settlement Agreement. *Id.* Notably, on October 28, 2022, Defendant Miller completed two affidavits certifying that Defendants fully complied with the Settlement Agreement's drawing-destruction mandates. *Id.* at PageID.292–95.

### B. This Case

This case completes the trilogy. According to Plaintiff, it "recently discovered from two vendors" that Defendant Prescott is still "soliciting work from manufacturers" using "design drawings that are derived from" its copyrighted drawings. ECF No. 1 at PageID.2. Plaintiff alleges that Defendant Prescott "is distributing and using at least one technical drawing that is derived from copyrights B&P blade design drawings for one of B&P's vertical mixers," and a part "that is a near replica of B&P's lower gear housing design, which is depicted in the associated design drawings for the same [B&P]" mixer. *Id.*; *see also id.* at PageID.10–13. Further, Plaintiff asserts that the substantial similarities between its blade drawings and Defendants', taken as a whole, are

virtually impossible without Defendants having used Plaintiff's drawings. *Id.* at PageID.66. That impossibility is due to the "unique combination of precise measurements of each piece of a mixer blade," *id*. at PageID.44–45, some of which are "not necessary to the functioning of the" blade, *id*. at PageID.27, 49. Some examples of these similarities are depicted below:






ECF No. 2 (sealed) at PageID.185, 188, 191, 196.

Plaintiff "also recently learned that" Defendant Prescott is currently competing with Plaintiff for vertical mixers business. ECF No. 1 at PageID.3. That is, Plaintiff received information from a "major client" that Defendant Prescott is participating in "an RFP process" conducted by that client for "bids on vertical mixers," and the client "imminently plans to choose suppliers as early as November of this year." *Id.* at PageID.3, 64. And according to Plaintiff, Defendant Prescott is likely using or about to use "drawings that are copies of or derived from" Plaintiff's drawings to unfairly secure this business. *Id.* at PageID.64–65.

As a result of this alleged infringement, Plaintiff filed a Verified Complaint against Defendants Prescott and Miller on October 21, 2025.[1] *See* ECF Nos. 1; 2 (sealed). Plaintiff asserts four claims: a (1) direct copyright infringement claim under the Copyright Act, 17 U.S.C. §§ 106, *et seq.,* against both Defendants; (2) vicarious liability claim against Defendant Miller; (3) contributory liability claim against Defendant Miller; and (4) breach of contract claim against both Defendants. ECF Nos. 1 at PageID.69–78; 2 (sealed) at PageID.225–34. The next day, Plaintiff moved for an *ex parte* temporary restraining order (TRO) prohibiting, among other things, Defendants' continued use of Plaintiff's copyrighted blade drawings and any derivative drawings. ECF Nos. 3; 4 (sealed).

## II.

Generally, courts may issue preliminary injunctive relief "only on notice to the adverse party." FED. R. CIV. P. 65(a)(1). But a court may issue a TRO without notice to the adverse party under Civil Rule 65(b)(1) if the movant satisfies two prerequisites. First, a movant must set forth "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and

---

[1] This case was initially assigned to District Judge Mark A. Goldsmith, but Judge Goldsmith recused from the case, and it was reassigned to the undersigned. ECF No. 17.

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Second, "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1)(B).

If the movant clears those procedural hurdles, the court then turns to the merits. In determining whether to grant a TRO, a court must weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief." *A & W X-Press, Inc. v. FCA US*, LLC, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The TRO standard is "logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

### III.

Against that backdrop, the threshold inquiry is whether Plaintiff's Motion complies with Civil Rule 65(b)(1)'s procedural prerequisites—which this Court must "scrupulously honor[]." *Alahverdian v. Nemelka*, No. 3:15-CV-060, 2015 WL 1276453, at *2 (S.D. Ohio Mar. 19, 2015) (quoting Moore's Federal Practice § 2952); *see also Prentice v. Transcend DVentures*, No. 1:23-CV-10011, 2025 WL 2901522, at *1 (E.D. Mich. Oct. 10, 2025) (noting that the Federal Rules of Civil Procedure matter and are not trifling technicalities). It does not.

Plaintiff's Motion suffers a fatal flaw under Civil Rule 65(b)(1)(B): It does not certify "any efforts made to give notice" to Defendants "and the reasons why it should not be required" before

- 6 -

obtaining injunctive relief. *Davis v. Colerain Twp.*, No. 1:24-CV-56, 2024 WL 488211, at *1 (S.D. Ohio Feb. 8, 2024) (explaining that failing to certify why notice should not be required is fatal—even if counsel certifies that he will serve the defendant). Plaintiff represents that it did not provide notice to Defendants before filing the Motion, but that it would serve a copy of the Motion with its initial process after it filed the Motion. ECF No. 3 at PageID.390–91, 420. But Plaintiff does not explain why the general rule requiring notice and an opportunity for Defendant to be heard before a court issues injunctive relief should not apply in this particular case. *See generally id.*

Ordinarily, a court is only "justified in proceeding *ex parte*" for a TRO where (1) "notice to the adverse party is impossible," or (2) "notice to the defendant would render fruitless further prosecution of the action" because "there is not less drastic means for protecting the plaintiff's interest." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (citation modified). These two limited categories "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute." *Id.* (citation modified); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). Yet Plaintiff provides no explanation why this case falls into either category.

The sole reason Plaintiff seemingly offers for proceeding *ex parte* is "the emergent nature of the relief requested in the" Motion. ECF No. 3 at PageID.390–91. But Civil Rule 65(b) assumes that all TROs are emergent by requiring *immediate* and irreparable injury to the moving party under Civil Rule 65(b)(1)(A), and still requires the additional step of certifying that notice to the adverse party "should not be required" under Civil Rule 65(b)(1)(B). In this way, proceeding *ex parte* merely because of "the emergent nature of the relief requested," ECF No. 3 at PageID.390–91, would render Civil Rule 65(b)(1)(B)'s additional step superfluous. As a result, Plaintiff has not

adequately satisfied Civil Rule 65(b)(1)(B)'s procedural prerequisite. So this Court cannot issue an *ex parte* TRO, and Plaintiff's Motion for a TRO, ECF Nos. 3; 4 (sealed), will thus be denied. *See Slave Legacy, LLC v. Son of Slave*, No. 3:23-CV-152, 2023 WL 3919317, at *5 (S.D. Ohio June 9, 2023) (holding that courts may not issue TROs if Civil Rule 65(b)(1)(B) has not been satisfied) (collecting cases); *see also Partner Assessment Corp. v. Rosen*, No. 1:25-CV-12382, 2025 WL 2336107, at *3 (E.D. Mich. Aug. 13, 2025) (same).[2]

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for a Temporary Restraining Order, ECF No. 3; 4 (sealed), is **DENIED.**

**This is not a final order and does not close this case.**

Dated: October 31, 2025            s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge

---

[2] This Court makes one final observation. Civil Rule 65(c) requires the movant to provide security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" by a preliminary injunction or TRO. In Plaintiff's proposed order, it leaves the security amount blank and provides no information for an assessment of a proper security amount. ECF No. 3-1 at PageID.426. Such information is needed for those determinations. *See Partner Assessment Corp. v. Rosen*, No. 1:25-CV-12382, 2025 WL 2409195, at *9 (E.D. Mich. Aug. 20, 2025).